UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 20-04287-JLS (DFM) | Date: | May 11, 2022 |
|---|---|---|---|
| Title | James Lewis Dixie v. J. Amarillas et al. | | |

| Present: The Honorable | Douglas F. McCormick, United States Magistrate Judge |
|---|---|
| Nancy Boehme | Not Present |
| Deputy Clerk | Court Reporter |
| Attorney(s) for Plaintiff(s): | Attorney(s) for Defendant(s): |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) Order re: Plaintiff's Motion to Compel (Dkt. 46)

Plaintiff has filed a motion for an order compelling Defendants to produce documents and respond to interrogatories. See Dkt. 46 ("Motion"). Defendants filed an opposition. See Dkt. 50 ("Opp'n"). Plaintiff filed a reply. See Dkt. 52. For the reasons set forth below, the motion is granted in part and denied in part.

### I.  BACKGROUND

Plaintiff is a state prisoner. In 2019, he was in custody at the California Men's Colony in San Luis Obispo, California ("CMC"). See Dkt. 18, Second Amended Complaint ("SAC") at 1-3.[1] He alleges that employees of CMC, including Defendants Correctional Officer J. Amarillas, Correctional Sergeant P. Ward, Correctional Officer S. Poindexter, and Office Assistant J. Gomez, conspired to unlawfully retaliate against him for the protected activity of filing a series of inmate grievances against Amarillas. See id. at 11-12.

In 2021, I ordered service on the four named Defendants. See Dkts. 21-23. After Defendants filed an Answer, I ordered that all discovery be completed by February 10, 2022. See Dkt. 36; Dkt. 37 at 1.

On February 20, 2022, Plaintiff constructively filed the present motion. See Motion at 8. He asks that Defendants be ordered to produce documents responsive to fifteen Requests for Production of Documents ("RFPs") and to provide supplemental responses to thirty-one interrogatories. See id. at 1-6.

---

[1] Plaintiff has since been transferred to the R.J. Donovan Correctional Facility near San Diego, California. See Dkt. 38.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

On March 28, 2022, Defendants filed an opposition, which was accompanied by the declarations of defense counsel and four others: N. Diaz-Acosta, CMC's Litigation Coordinator; M. Reynoso, CMC's Grievance Coordinator; S. McAlister, CMC's Employee Relations Officer; and T. Worthy, the Litigation Coordinator in the CDCR's Office of Internal Affairs. See Opp'n; Dkt. 50-1 ("Lessner Decl.") ¶¶ 12-16 & Exhs. B-E. To date, Defendants have produced to Plaintiff 231 pages of responsive documents. See Lessner Decl. ¶ 3.

## II.    LEGAL STANDARD

Federal Rules of Civil Procedure 26(b) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

A party may request documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). The responding party must respond in writing and is obliged to produce all specified relevant and non-privileged documents. In the alternative, a party may state an objection to a request, including the reasons. See Fed. R. Civ. P. 34(b)(2)(B)-(D).

A party may also "serve on any other party no more than 25 written interrogatories," which may "relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a). Each interrogatory "must, to the extent it is not objected to, be answered separately and fully in writing under oath" and "grounds for objecting . . . must be stated with specificity." Fed. R. Civ. P. 33(b)(3)-(4).

## III.   DISCUSSION

Defendants argue that all documents they have withheld are protected by the official information privilege. See Opp'n at 8-14. Federal law recognizes a qualified privilege for official information. See Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir. 1990); Kelly v. City of San Jose, 114 F.R.D. 653, 660 (N.D. Cal. 1987). To determine whether such information should be protected, I must weigh the potential benefits of disclosure against its potential disadvantages; if the latter is greater, the official information privilege may bar discovery. See Sanchez, 936 F.2d at 1033-34. Such balancing should be conducted on a case-by-case basis, determining what weight each relevant consideration deserves in the fact-specific situation before the court. See Miller v. Panucci, 141 F.R.D. 292, 300 (C.D. Cal. 1992) (citing Kelly, 114 F.R.D. at 663). This balancing test is moderately pre-weighted in favor of disclosure:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

> Such pre-weighting is consistent with the well-established notion that because privileges operate in derogation of the truth finding process the law places the burden of proving all elements essential to invoking any privilege on the party seeking its benefits. The pre-weighting also is consistent with the related idea that privileges generally are to be narrowly construed, and that doubts about their applicability are to be resolved in favor of disclosure.

Kelly, 114 F.R.D. at 662.

Before I balance benefits and disadvantages, the party asserting the official information privilege must make a "substantial threshold showing" at the time it files and serves its response to the discovery requests by submitting an affidavit or declaration from a responsible official with personal knowledge of the matter. Id. at 669; see also Soto v. City of Concord, 162 F.R.D. 603, 613 (N.D. Cal. 1995). The affidavit or declaration must include:

> (1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality . . . , (2) a statement that the official has personally reviewed the material in question, (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer, (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interest, (5) and a projection of how much harm would be done to the threatened interests if the disclosure were made.

Kelly, 114 F.R.D. at 670. "If the court concludes that a defendant's submissions are not sufficient to meet the threshold burden, it will order disclosure of the documents in issue." Soto, 162 F.R.D. at 613; Miller, 141 F.R.D. at 301.

Here, Defendants failed to serve with their discovery responses and objections any affidavit or declaration from any responsible official supporting Defendants' official-information-privilege objections. See Lessner Decl. ¶ 3. Defendants explain that, notwithstanding this failure, supporting declarations were prepared immediately after Plaintiff's motion to compel was filed and were served on him the next day. See id. ¶¶ 9-12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Although Defendants did not strictly comply with the established procedures for invoking the official information privilege, I conclude that ordering blanket disclosure of all the contested information is not an appropriate remedy. Defendants' evidence, discussed in further detail below, suggests that ordering disclosure of certain information could possibly jeopardize the security of CMC and the personal safety of CMC staff and inmates. Additionally, Defendants' delay in timely serving supporting declarations has not resulted in substantial prejudice to Plaintiff and has not substantially compromised the integrity of the discovery process. Most critically, the delay did not prevent Plaintiff from arguing against application of the privilege. See generally Reply.

Accordingly, I will proceed to balance the potential benefits and disadvantages of disclosure in this fact-specific situation. The conclusions I reach below reflect such balancing.

**RFPs Concerning the Confidential Portions of Plaintiff's Appeal Logs**

RFP Nos. 1-7, 12 and 15 concern nine of Plaintiff's CDCR Form 602 appeal logs, including both early grievances that allegedly caused Defendants to retaliate against him and the later grievances that complained of the retaliation. See Motion at 1-2, 11-14, 16-17. Defendants have already produced the non-confidential portions of eight of the nine appeal logs. See Lessner Decl. ¶ 26. They claim that the rest are protected by the official information privilege. See Opp'n at 7-12.

Among Defendants' declarants, only Grievance Coordinator M. Reynoso has personally reviewed the confidential portions of Plaintiff's nine appeal logs. See Lessner Decl. Exh. C, Reynoso Decl. ¶ 4. He states that they "contain confidential grievance inquiries related to internal CDCR inquiries." Id. ¶ 4. However, he does not explain the nature or subject of either set of inquiries. Two paragraphs later, he states that "[t]his information,"—to what information he refers is not clear—"also contains personal information of staff members and other inmates." Id. ¶ 6. Finally, he states that allowing Plaintiff to have "the confidential investigatory reports, findings, materials, and other writings concerning [his] CDCR 602 appeal Logs" would "harm CDCR's interest in having a plain, speedy, and effective inmate grievance policy and system." Id. ¶ 12. He "believe[s] that the inmates' right to make grievances . . . would be chilled," because inmates might become less inclined to provide detailed, accurate information if they knew that "inmate litigators could have access to grievances simply because they filed a lawsuit." Id.

These arguments are vague and speculative. There is no reliable evidence that disclosure to Plaintiff of these nine appeal logs—redacted as necessary and disclosed under a protective order—would cause any appreciable harm to CDCR's grievance system. Personal or institutionally sensitive information can be redacted. The argument that inmates'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

grievance rights would be chilled by a one-time disclosure of Plaintiff's own appeal logs to Plaintiff is not persuasive.

On the other side of the ledger, Plaintiff argues that these documents are relevant to his claims of retaliation. See Reply at 1-3. He points out that statements made by several fellow inmates and employees in the appeal logs were made in support of Plaintiff's appeals, such that disclosure in this instance would not have any chilling effect on them. See id. at 3. Moreover, disclosure would promote the truth-finding process because the appeal logs likely contain details of the parties' actions and statements recorded close to the time that the relevant events occurred. Accordingly, the official information privilege does not bar discovery of these documents. Plaintiff's motion is therefore GRANTED as to the documents withheld based on this objection; subject to the issuance of a protective order under the procedure outlined below, Defendants are ORDERED to produce their documents within fourteen (14) days.

### RFPs Concerning Staff Complaints against Defendants

RFP No. 16 seeks

> any and all staff complaints filed against Defendant J. Amarillas, between . . . January 1, 2014 to the present, to include but not limited to, the nature of the complaint, the complaint log number, investigative reports, the name [and] title of the authors of the investigative reports, the investigative findings, and any and all other documents and materials related to the disposition of the complaints, (Confidential portions to be redacted.).

Motion at 18.

Defendants state that two potentially responsive complaints exist. See Opp'n at 8. However, they argue that none of the documents related to those cases can be disclosed because they are classified as confidential and "would endanger the safety of persons within the prison and jeopardize the security of the information if disclosed." Id.[2] To support this claim, Defendants attach the Declaration of CMC Employee Relations Officer S. McAlister. See Lessner Decl. ¶ 15 & Exh. D.

Officer McAlister gives several reasons why different types of confidential documents might be protected from disclosure in the prison context. See McAlister Decl. ¶¶ 8-13. For example, documents may contain information about the techniques used to respond to

---

[2] Under California prison regulations, information shall be classified as confidential if its disclosure "would endanger the safety of any person" or "jeopardize the security of the institution." Cal. Code Regs., tit. 15, § 3321(a)(1)&(2).

prison emergencies or handle attacks by inmates against correctional officers. See id. ¶¶ 8-9. Revealing that information to inmates could give them the means to threaten the safety of the officers and security of the prison. See id. Or the documents might include personal identifying information of the officers, which could help inmates find and cause harm to them and their families. See id. ¶ 10.

However, Officer McAlister does not state that the documents potentially responsive to RFP No. 16 contain any such emergency-response, attack-handling, or personal identifying information. Instead, Officer McAlister states that disclosure of these documents to an inmate like Plaintiff would destroy CMC's ability to maintain the confidentiality of staff-misconduct investigations. See id. ¶ 12. That confidentiality is important, Officer McAlister explains, for several reasons. It encourages complaining inmates to make truthful statements and encourages investigators to accurately report their findings. See id. ¶ 11. It also protects inmate-witnesses who provide statements to staff members from being revealed, labeled as snitches, and assaulted or killed by other inmates. See id. ¶¶ 12-13.

Defendants' argument is not persuasive. The notion that inmates and investigators would become unforthcoming, untruthful, or inaccurate because a future civil-rights plaintiff might one day review their statements or findings and seek to connect them to later-alleged misconduct is implausible. Defendants do not support that notion with any empirical evidence or illustrate it with any realistic scenario.

As for investigators specifically, the opposite is more plausible. As another court has noted, an investigator "who knows that no one from outside the [prison] community will scrutinize his statements or his investigatory work may not feel the same level of pressure to be honest and accurate as would his counterpart in a system where some disclosure was possible." Kelly, 114 F.R.D. at 665.

Similarly, the idea that disclosing these particular staff-complaint documents to Plaintiff would chill the flow of information to CMC is illogical. An inmate "who complains about [staff] misconduct simply is not in the same position as a confidential informant or a[n inmate] who offers information that is potentially damaging to another" inmate. Id. at 666. "The obvious reasons people in the latter categories have for wanting to protect their anonymity simply have no bearing on the behavior of [inmates] who file complaints against [staff]." Id. In any event, CMC's concern for the safety of inmate-witnesses can be adequately protected by a protective order and by redacting information that could link the statements of a potentially vulnerable witness to his identity.

Plaintiff argues that the withheld staff-complaint documents are relevant to his claims of retaliation because they are reasonably calculated to lead to evidence that Amarillas previously committed bad acts like the ones alleged in the present case. See Reply

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

at 4. Those acts could help Plaintiff prove Amarillas' motive, opportunity, preparation, plan, knowledge, identity, and the absence of any mistake or accident. See id.

In sum, the reasons Defendants give for withholding these specific documents are unconvincing. The potential disadvantages of disclosing these documents do not outweigh the potential benefits of disclosing them. Accordingly, Plaintiff's motion as to RFP No. 16 is GRANTED.

RFP Nos. 17-18 seek documents related to any staff complaints filed against Defendants Ward and Poindexter. See Motion at 2-3, 19-20. Defendants report that Officer McAlister searched for such documents (using the same method that found the two staff complaints against Amarillas) and found no documents responsive to Plaintiff's requests. See Opp'n at 8. Similarly, RFP Nos. 19-21 seek documents related to any CDCR Office of Internal Affairs investigation of Defendants Amarillas, Ward, or Poindexter. See Motion at 2-3, 20-22. Defendants state that OIA Litigation Coordinator T. Worthy searched the OIA records and found no documents responsive to Plaintiff's requests. See Opp'n at 8. Because these requests seek to compel the production of documents that do not exist, Plaintiff's motion as to these RFPs is DENIED.[3]

**Interrogatories Concerning Complaints Against Defendants**

Twenty-one interrogatories—Amarillas Interrogatory Nos. 4-5, 7, 9-10, 15, 18, 20-21, Ward Interrogatory Nos. 7-11, 14-15, and Poindexter Interrogatory Nos. 19-23—ask these three Defendants to identify complaints filed against them and whether the OIA has investigated them. See Motion at 3-4. Defendants offer that, "[a]t the direction of this Court, [they] will supplement their responses to [these interrogatories]" to reflect that, after McAlister and Worthy searched the relevant systems, it was found that "(1) there have been no investigations by the OIA into the actions of Amarillas, Ward or Poindexter; (2) there have been no staff complaints made against Ward or Poindexter; and (3) there are no staff complaints against Amarillas, however, there is one case that [was] withdrawn and one case that was changed to corrective action (letter of instruction)." Opp'n at 15. Plaintiff does not oppose Defendants' offer. Accordingly, Defendants are ORDERED Defendants to supplement their responses to these interrogatories as offered within fourteen (14) days of the date of this order.

Plaintiff no longer requests that I compel Defendants to answer all twenty-one interrogatories. See Reply at 6. However, he reiterates his request that I compel them to answer a subset of eleven Interrogatories: Amarillas Interrogatory Nos. 4-5, 9-10, 18, Ward

---

[3] I cannot compel a party to produce documents that do not exist. See Rogers v. Giurbino, 288 F.R.D. 469, 485 (S.D. Cal. 2012) ("A party, however, is not required to create a document where none exists.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Interrogatory Nos. 7, 9-11, and Poindexter Interrogatory Nos. 19 and 22. See Reply at 6-8. As a group, these eleven Interrogatories ask Defendants to identify all complaints filed against them of any kind, whether made by inmates or fellow employees. See Motion at 28, 31, 35, 42-45, 56, 58.

Plaintiff argues that these eleven Interrogatories are needed to cover the larger universe of complaints that Litigation Coordinator N. Diaz-Acosta could not have found even with a good-faith search because, Plaintiff points out, "[u]nless a prison grievance results in a disciplinary action against the officer . . . or the grievance has been classified as a staff complaint, a search cannot be conducted by officer names." Lessner Decl. Exh. B, Diaz-Acosta Decl. ¶ 7. Accordingly, these eleven Interrogatories likely cover more complaints than are feasibly searchable by prison officials. At the same time, many of these Interrogatories are vaguely worded, overly broad, and unduly burdensome in light of the nature of the issues in the case. Within this subset, only Amarillas Interrogatory 5 ("Please identify any and all CDCR 602 appeal complaints filed against you specifically for retaliation") is not unduly burdensome and is proportional to the needs of the case. Defendant Amarillas is accordingly ORDERED to provide a supplement response to Interrogatory 5 within fourteen (14) days; except as ordered above, Plaintiff's motion to compel as to the remaining interrogatories is DENIED.

### Interrogatories Concerning the "Accountability" Process

Four Interrogatories—Amarillas Interrogatory No. 13, Ward Interrogatory No. 16, Poindexter Interrogatory No. 6, and Gomez Interrogatory No. 14—ask Defendants to describe the "accountability" process for all staff entering and exiting the CMC-East Facility, Motion at 33, 47, 52, 67; three of them specify that the relevant process is the one "for security purposes," id. at 33, 47, 67. Defendants' objection that these Interrogatories are vague, overbroad, and unduly burdensome is well-taken. See Opp'n at 15-16. The disclosure of responsive information could also jeopardize the security of CMC if it became widely known to inmates. Plaintiff's motion as to these interrogatories is therefore DENIED.

However, in the Opposition, Defendants "invite[d Plaintiff] to serve Poindexter with an interrogatory request asking whether he was physically present on the CMC East Facility [grounds] on July 17, 2019." Opp'n at 15-16 n.2. Plaintiff is granted leave of court to serve a supplemental interrogatory consistent with Defendants' invitation.

### Other Poindexter Interrogatories

The remaining Interrogatories concern Plaintiff's allegation that a Rules Violation Report ("RVR") against him was entered into the Strategic Offender Management System ("SOMS") under circumstances that suggest a retaliatory conspiracy. Specifically, the RVR states that Gomez received a signed document establishing a rules violation from

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Poindexter on July 17, 2019. See SAC at 9, 15. However, Plaintiff alleges that Poindexter was on vacation that day and that Gomez must have received instructions from someone else in the conspiracy to enter the RVR into SOMS. See id. at 9-10.

Poindexter Interrogatory No. 2 asks Poindexter to "state the specific days [he] worked between the time period of July 1, 2019 and August 1, 2019." Motion at 51. Defendants object that the meaning of "worked" is ambiguous and unclear but direct Plaintiff to Poindexter's Employee Time Sheet Summary Report, located in Defendants' document production at Def. 158-63, which fully encompasses the time period stated in the Interrogatory. See Opp'n at 16-17. Plaintiff does not explain why the Employee Time Sheet Summary Report would be insufficient to establish "whether [Poindexter] was present on CMC East Facility Grounds on a particular date." Reply at 9. Accordingly, Plaintiff's motion as to this interrogatory is DENIED.[4]

Poindexter Interrogatory No. 4 asks Poindexter if he was "physically incapacitated due to illness o[r] injury on July 17, 2019." Motion at 52. Asserting objections of vagueness and that the Interrogatory was not reasonably calculated to lead to the discovery of admissible evidence, Poindexter responded that he "had difficulty using [his] right hand on July 17, 2019, because of injury." Id. In a meet-and-confer letter, Plaintiff defined "physically incapacitated" to mean "physically unable to perform job duties due to an injury (broken leg or other physical injury) or illness (such as in the hospital with COVID-19) whatever." Motion at 104. Plaintiff states that the allegations in the SAC and his letters makes this term's meaning "crystal clear." Id.

According to the allegations in the SAC, the February 25, 2016 CDCR Memorandum that governs rules violation reports permits staff to enter them into the relevant system on behalf of another employee only "[i]n the event the Reporting Employee is physically incapacitated due to illness or injury." SAC at 9. Whether Poindexter and Gomez deviated from these procedures is relevant to Plaintiff's claims of a retaliatory conspiracy. Poindexter Interrogatory 4 uses the same term that the CDCR uses in the same context. Thus, it is not credible to claim, as Defendants do, that answering the question of whether Poindexter was physically incapacitated "requires a medical expert opinion." Opp'n at 17. Plaintiff's motion is GRANTED as to Poindexter Interrogatory No. 4 and Defendant Poindexter is ORDERED to provide a supplemental answer within fourteen (14) days of the date of this order that provides not only an answer but specifies the definition of "physically incapacitated" used, whether the definition provided by Plaintiff, see Motion at 104, or any found in relevant CDCR documents.

---

[4] At any rate, as mentioned above, I have permitted Plaintiff to serve and ordered Defendant Poindexter to answer an interrogatory asking whether he was physically present on the CMC East Facility grounds on July 17, 2019.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Poindexter Interrogatory No. 13 asks Poindexter if he was "on vacation the day of July 17, 2019." Motion at 54. Poindexter objects on the ground that the Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. See Opp'n at 17. Plaintiff argues that the answer is relevant to his allegation that Poindexter did not give Gomez a signed document to enter a rules violation report into the system on July 17, 2019. See Reply at 9-10. Plaintiff gets the better of the argument: if Poindexter was on vacation on a certain day, it makes it more likely that he did not give Gomez a signed document on that day. Plaintiff's motion is therefore GRANTED as to this interrogatory and Defendant Poindexter is ORDERED to provide a supplemental response within fourteen (14) days.

### Other Gomez Interrogatories

Finally, Gomez Interrogatory Nos. 6, 12, and 20 all concern Defendant Gomez's understanding or interpretation of the CDCR Memorandum that allegedly governs rules violation reports. See Motion at 5-6, 64, 66, 69. Defendants object that these Interrogatories use vague and ambiguous language and direct Plaintiff back to the Memorandum itself. See Opp'n at 18-19. They also argue that Defendant Gomez already gave a true, accurate, and non-evasive response when he stated that he entered the RVR into SOMS "as part of [his] job duties." Id. at 18. I agree with Defendants that these Interrogatories are too vague and ambiguous to compel Defendants to answer. Accordingly, Plaintiff's motion as to these interrogatories is DENIED.

**IV. CONCLUSION**

If Defendants wish to make their supplemental responses under a protective order, they are ordered to file and serve on Plaintiff a proposed protective order within **seven (7) days**, which will temporarily pause the obligation to make the discovery responses. Plaintiff will have **fourteen (14) days** from receiving any proposed protective order to file a notice accepting it or to file proposed revisions. I will then issue a protective order and Defendants' obligation to make the discovery responses will resume.

Further, any documents produced with redactions must be accompanied by a redaction log explaining why each redaction was made, as well as a declaration from a responsible official that explains the specific institutional purpose served by each redaction. Defendants are ORDERED to send to the Court unredacted copies of any page that is produced to Plaintiff with any text redacted.